JOAN B. TUCKER FIFE (SBN: 144572)
jfife@winston.com
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
Telephone:   (415) 591-1000
Facsimile:    (415) 591-1400

EMILIE C. WOODHEAD (SBN: 240464)
ewoodhead@winston.com
CAITLIN W. TRAN (SBN: 305626)
cwtran@winston.com
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Attorneys for Defendant
U.S. BANK NATIONAL ASSOCIATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA SALHA, an individual<br><br>Plaintiff,<br><br>vs.<br><br>US BANK NATIONAL ASSOC, business entity form unknown, and DOES 1 to 50, inclusive,<br><br>Defendants. | **Case No. 22-cv-08752**<br><br>(Orange County Superior Court Case No. 30-2022-01288308-CU-WT-NJC)<br><br>**DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br><br>Complaint filed: October 25, 2022 |

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD AND TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1332, Defendant U.S. Bank National Association ("Defendant") hereby removes the above-captioned matter from the Superior Court of the State of California in and for the County of Orange, to this Court. In support of its request, Defendant states as follows:

**I.    INTRODUCTION**

1.    This case is hereby removed from state court to federal court pursuant to 28 U.S.C. § 1332 because (1) complete diversity of citizenship exists between the parties, (2) the claims of Plaintiff Sandra Salha ("Plaintiff") exceed $75,000 exclusive of interest and costs, and (3) this Court is in the judicial district and division embracing the place where the state court action was initiated and is pending. Therefore, this Court has original jurisdiction pursuant to 28 U.S.C. Section 1332(a).

**II.    VENUE**

2.    The action was filed in Superior Court for the State of California, County of Orange. Venue therefore properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 84(c), 1391(a), and 1441(a).

**III.    THE STATE COURT ACTION IN THIS CASE**

3.    On October 25, 2022, Plaintiff filed a Complaint in the Superior Court of the State of California, for the County of Orange, entitled *Salha v. U.S. Bank National Assoc.,* Case No. 30-2022-01288308-CU-WT-NJC. The Complaint was served on Defendant on or about November 2, 2022. A true and correct copy of the Summons and Complaint is attached hereto as Exhibit "A."

4.    The Complaint alleges claims for: (1) disability discrimination; (2) failure to provide reasonable accommodations; (3) retaliation in violation of FEHA; (4) interference with CFRA rights; (5) retaliation for exercising CFRA rights;

(6) whistleblower retaliation; (7) wrongful termination in violation of public policy; (8) intentional infliction of emotional distress; (9) failure to provide meal and rest periods; (10) failure to provide accurate wage statements; (11) waiting time penalties; and (12) violation of Business and Professions Code § 17200, *et seq*. (Complaint ¶¶ 17-88.)

5.    On November 30, 2022, Defendant timely filed an Answer to Plaintiff's Complaint in state court, a copy of which is attached hereto as Exhibit "B."

**IV.    JOINDER**

6.    Defendant is not aware of any other defendant having been served with a copy of the Complaint.

**V.    BASIS FOR FEDERAL JURISDICTION UNDER 28 U.S.C. § 1332**

7.    The Court has original jurisdiction over this action because it is an action between citizens of different states involving an amount in controversy that exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a).

**A.    Plaintiff is a citizen of California.**

8.    To establish citizenship for diversity purposes, a natural person must be both: (a) a citizen of the United States, and (b) a domiciliary of one particular state. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A party's residence may serve as *prima facie* evidence of that party's domicile. *State Farm Mut. Auto. Ins. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

9.    Here, Plaintiff alleges that she has been a California resident at all times relevant to this action. (Complaint ¶ 1.) Plaintiff was employed by and performed her work for Defendant in the State of California for more than three and half years. (Complaint ¶ 11.) Further, based on information that Plaintiff submitted to Defendant throughout the course of her employment, Plaintiff consistently listed a home address

located in California as her current address and her resume indicates she has been employed in California since at least 2016 and that she attended high school and college in California from 2011 to 2019, which demonstrates her "intention to remain" in California and establishes domicile in California. *See Wilson v. CitiMortgage*, No. 5:13-CV-02294-ODW SP, 2013 WL 6871822, at *2 (C.D. Cal. Dec. 17, 2013) (noting that other objective facts, including plaintiff's place of employment, may further establish a plaintiff's citizenship for purposes of removal). Plaintiff is therefore a citizen, domiciliary, and resident of the State of California.

**B.    Defendant is not a citizen of California.**

10.    Defendant U.S. Bank National Association was, at the time of the filing of this action, and still is, a citizen of a state other than California. U.S. Bank National Association was and is a national banking association with its main office in Cincinnati, Ohio. Accordingly, U.S. Bank National Association was and is a citizen of Ohio. *See* 28 U.S.C. § 1348 ("All national banking associations shall, for purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located"); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that a national bank, for purposes of 28 U.S.C. § 1348, "is a citizen of the state in which its main office, as set forth in its articles of association, is located").

10.    It appears from the caption of the Complaint that only U.S. Bank National Association is a defendant in this matter. The caption also lists "DOES 1 to 50, inclusive" as defendants. There are no "Doe Defendants" in federal district court. For purposes of removal "the citizenship of defendant sued under fictitious names *shall* be disregarded." 28 USC § 1441(b)(1) (emphasis added). Codefendants not served need not join in the removal for removal to be proper. *Destino v. Reiswig*, 630 F.3d 952, 955-57 (9th Cir. 2011).

11.    Complete diversity of citizenship thus exists in accordance with 28 U.S.C. § 1332(a)(1) because Plaintiff has been a California citizen at all relevant

AmericasActive:17832135.4

times, Defendant U.S. Bank National Association has been a citizen of a state other than California at all relevant times, and no other defendant is named.

### A.    The amount in controversy exceeds $75,000.

12.    Plaintiff does not specifically allege an amount in damages in the Complaint; nor does she allege that the amount in controversy is less than $75,000. Where a complaint does not state a total amount in controversy, Defendant needs only show by a preponderance of the evidence that the amount in controversy requirement has been met. *Caus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 179 (1936). As the Ninth Circuit has explained, "[t]he amount in controversy is simply an estimate of the total amount in dispute." *Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

13.    The Complaint seeks various forms of relief, including general and special damages, Labor Code damages and penalties, pre-judgment and post-judgment interest, attorneys' fees, civil penalties, costs of suit incurred, declaratory relief, equitable relief, and punitive damages. (Complaint; ¶¶ 58, 68; Prayer for Relief.) Where, as here, the Complaint does not specify an amount of damages sought, the defendant may prove, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir. 1996). A defendant can meet its burden by offering facts supporting that the amount in controversy exceeds the jurisdictional minimum or producing evidence of jury verdicts for damages awarded in cases with analogous facts. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 564 (9th Cir. 1992); *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Vasquez v. Arvato Digital Servs.*, No. CV 11-02836, 2011 WL 2560261 at *3 (C.D. Cal. June 27, 2011); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2002).

14.    To determine the amount in dispute, the Court must consider the aggregate of general, special, and punitive damages in addition to attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (statutory attorneys' fees

1  to be included in amount in controversy, regardless of whether such an award is
2  discretionary or mandatory); *Davenport v. Mut. Benefit Health & Accident Ass'n*, 325
3  F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where
4  recoverable under state law); *Conrad Assoc.'s v. Hartford Accident & Ind. Co.*, 994 F.
5  Supp. 1196, 1198 (N.D. Cal. 1998) (the amount in controversy includes claims for
6  general and special damages).

7      15.    **Lost Earnings.**  Plaintiff seeks lost earnings. (*See* Complaint ¶¶ 22, 30,
8  37, 44, 50, 62, 67; Prayer.) Lost earnings, including back pay, may be considered
9  when calculating the amount in controversy. *See Lamke v. Sunstate Equip. Co., LLC*,
10  319 F. Supp. 2d 1029, 1031, 1033 (N.D. Cal. 2004) (taking plaintiff's potential back
11  pay into account for determining the amount in controversy). In a discrimination case,
12  back pay is awarded from the date of the alleged discriminatory act until the date of
13  final judgment. *Krasezewki v. State Farm Gen. Ins. Co.*, 912 F.2d 1182, 1184 (9th Cir.
14  1990). Plaintiff's Complaint alleges that her last date worked was March 25, 2022,
15  when she went on leave, and that her employment with Defendant was terminated on
16  or about June 20, 2022. (Complaint ¶¶ 11, 13.) Based on a review of Plaintiff's pay
17  records, as of March 25, 2022 she earned $26.77 per hour and worked 40 hours per
18  week, for total earnings of $936.95 per week. Using this weekly figure to determine
19  back pay from June 20, 2022 to the present, the amount in controversy for Plaintiff's
20  potential back pay damages for lost wages at the time of removal are approximately
21  **$21,549.85** ($936.95 per week x 23 weeks). The amount in controversy is, in fact,
22  higher because Plaintiff alleges that she *continues* to sustain economic damages in
23  earnings and other employment benefits. (*See, e.g.,* Complaint ¶ 22.)

24      16.    **Whistleblower Retaliation.**  Plaintiff alleges that she is entitled to
25  statutory penalties for whistleblower retaliation pursuant to California Labor Code
26  Section 1102.5(e), which provides: "[i]n addition to other penalties, an employer that
27  is a corporation or limited liability company is liable for a civil penalty not exceeding
28  ten thousand dollars ($10,000) for each violation of this section." Plaintiff's cause of

action for violation of section 1102.5 therefore places in controversy an additional **$10,000.00** in statutory penalties.

17.    **Meal Period Violations**.  Plaintiff alleges Defendant failed to provide Plaintiff with "***all*** proper meal periods" and that "Plaintiff was suffered and permitted to work through legally required meal breaks." (Complaint ¶ 70 (emphasis added).) Therefore, Plaintiff alleges, "Defendant is responsible for paying premium compensation for missed meal [] periods" and "Defendant is required to pay Plaintiff one (1) hour of pay at Plaintiff's regular rate of compensation for ***each workday***." (*Id.*)

18.    Because Plaintiff alleges that Plaintiff is owed one hour of premium pay for each workday, Plaintiff's claims amount to five (5) meal period violations per week. *See Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) ("[P]laintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought," citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("Plaintiff only broadly alleges his wage-and-hour violations.... Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate.")

19.    Defendant employed Plaintiff for 3 years, 8 months, and 11 days, which included at least 757 meal break eligible shifts. Plaintiff's weighted average rate of pay during the course of her employment was $22.23 per hour. The amount in controversy for Plaintiff's meal period claim is **$16,828.11** (757 shifts x $22.23 per hour).

AmericasActive:17832135.4

20.    **Rest Period Violations**.  Plaintiff alleges that "Plaintiff was suffered and permitted to work through legally required rest breaks." (Complaint ¶ 70.) Therefore, Plaintiff alleges, "Defendant is responsible for paying premium compensation for missed [] rest periods" and "Defendant is required to pay Plaintiff one (1) hour of pay at Plaintiff's regular rate of compensation for ***each workday***." (*Id.*)

21.    As noted above, Plaintiff alleges that Plaintiff is owed one hour of rest period premium pay for each workday, which places the amount in controversy for Plaintiff's rest period claim also at **$16,828.11** (757 shifts x $22.23 per hour).

22.    **Waiting Time Penalties.**  Plaintiff alleges that she is entitled to 30 days of waiting time penalties pursuant to California Labor Code Section 203 based on Defendant's alleged failure to pay unpaid wages at termination. (Complaint ¶¶ 78-81.) Waiting time penalties may be included when determining the amount in controversy and are calculated at the terminated employee's daily wage rate multiplied by 30 days. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998), *as modified* (Dec. 11, 1998) ("the critical computation required by section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"). On Plaintiff's last day worked in March 2022 before her employment was terminated in June 2022, she earned a daily wage of $214.16 ($26.77 per hour x 8 hours per day). The amount in controversy for Plaintiff's claimed waiting time penalties is therefore **$6,424.80** ($214.16 per day x 30 days).

23.    **Inaccurate Wage Statements.**  Plaintiff alleges she is entitled to penalties pursuant to California Labor Code Section 226 based on Defendant's alleged "uniform policy and practice and procedure" of failing to provide accurate itemized wage statements. (Complaint ¶¶ 75, 76.) Labor Code Section 226 provides for penalties of $50 per employee for each initial pay period violation and $100 per employee for each subsequent pay period violation, up to $4,000 per employee. In the one-year period preceding her termination, there were 26 pay periods. Therefore, the

amount in controversy for Plaintiff's claim for inaccurate wage statements is **$2,550.00** ((1 pay period x $50) + (25 subsequent pay periods x $100))

24.    Plaintiff's claims for lost wages, whistleblower retaliation penalties, meal and rest break premium pay, inaccurate wage statements, and waiting time penalties only amounts to nearly the entire amount in controversy requirement of **$74,180.87**, before even considering Plaintiff's claims for emotional distress, punitive damages, and attorneys' fees.

25.    **Emotional Distress.**  Plaintiff also claims intentional infliction of emotional distress and claims damages for emotional distress. (*See* Complaint ¶¶ 23, 37, 44, 50, 62, 65-68.) The amount in controversy includes general and special damages. *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449 (S.D. Cal. 1995). Courts may consider emotional distress damages when analyzing the amount in controversy. *See Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005) (emotional distress damages of at least $25,000 considered in calculating amount in controversy); *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB AJWX, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015). A defendant can establish that the amount in controversy exceeds the jurisdictional minimum by producing evidence of jury verdicts for damages awarded in similar cases. *See Vasquez,* 2011 WL 2560261 at *3-4 (finding defendant's citations to disability discrimination cases with significant emotional distress damages was relevant in determining that amount in controversy for removal purposes). Jury verdicts in cases involving analogous claims of disability discrimination and retaliation demonstrate that the amount in controversy in this case for emotional distress damages *alone* exceeds the jurisdictional threshold. *See, e.g., Malone v. Potter*, No. CV 07-05530 MMM (FFMx), 2010 WL 330252 at *1 (C.D. Cal. Jan. 15, 2010) (jury awarded $300,000 in emotional distress damages in disability discrimination case); *Cosby v. Autozone Inc.*, No. 08CV00505 (LKK), 2010 WL 1012678 (E.D. Cal. Feb. 12, 2010) (award of $1,326,000 in mental suffering to

employee terminated based on disability). This claim alone establishes an amount in controversy of more than $75,000.

10. **Punitive Damages.** Plaintiff also seeks punitive damages due to Defendant's alleged malice, oppression, and/or fraud. (*See* Complaint ¶¶ 24, 32, 39, 46, 52, 58, 63, 68.) Because "[p]unitive damages are available under FEHA[,] . . . the Court may consider punitive damages when determining the amount in controversy." *Vasquez,* 2011 WL 2560261 at *4; *see also Richmond,* 897 F. Supp. at 450. It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (noting that because punitive damages are available under FEHA, courts "may consider punitive damages when determining the amount in controversy"). To prove that punitive damage awards can be substantial, a defendant may introduce jury verdicts awarding substantial punitive damage awards in cases with analogous facts. *Vasquez,* 2011 WL 2560261 at *4. To this end, there are numerous examples of substantial punitive damages awards in analogous cases. *See, e.g., Contreras-Velazquez v. Fam. Health Centers of San Diego, Inc.*, 62 Cal. App. 5th 88, 111 (2021), *as modified on denial of reh'g* (Apr. 7, 2021), *review denied* (June 30, 2021) (reducing jury award of $5 million in punitive damages to $1,831,290 based on failure to accommodate, failure to engage in the interactive process, and failure to prevent disability discrimination claim); *Ismen*, 2006 WL 2336358 (jury award of $825,000 in punitive damages for claims including disability discrimination and retaliation); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686, 692 (2009) (discussing a jury award of $15 million in punitive damages based on the jury's finding that the defendant wrongfully terminated the plaintiff based on her medical condition and related disability); *Crangle v. Stanford Univ.*, 2000 WL 33727181 (N.D. Cal. Mar. 30, 2000) (awarding punitive damages of $200,000 in retaliation claim). Here, Plaintiff seeks punitive damages for the majority of her claims, further demonstrating that the amount in controversy exceeds $75,000.

11.    **Attorneys' Fees.**  Finally, Plaintiff also seeks to recover attorneys' fees, which are properly considered when determining the amount in controversy for the purpose of removal. *See Galt G/S,* 142 F.3d at 1155-56 (claims for statutory attorneys' fees may be included in amount in controversy, regardless of whether award is discretionary or mandatory); CAL. GOV. CODE § 12965(b) (attorneys' fees are recoverable under the FEHA). The measure of attorneys' fees "should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." *Simmons,* 209 F. Supp. 2d at 1035. Moreover, "attorneys' fees in individual discrimination cases often exceed the damages." *Id.* Here, Plaintiff's claimed attorneys' fees are likely, in and of themselves, to exceed $75,000; Plaintiff's claimed attorneys' fees therefore further establish that the amount in controversy is over the $75,000 jurisdictional threshold.

12.    Accordingly, Plaintiff's claims for lost wages, penalties for whistleblower retaliation, meal and rest period premiums, inaccurate wage statements, waiting time penalties, emotional distress, punitive damages, and statutory attorneys' fees establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000 set forth in 28 U.S.C. § 1332(a).

## VI.    COMPLIANCE WITH STATUTORY REQUIREMENTS

13.    Pursuant to 28 U.S.C. § 1446(a), Defendant attaches hereto a true and correct copy of the Summons and Complaint as Exhibit "A." A true and correct copy of Defendant U.S. Bank National Association's Answer to Plaintiff's Complaint is attached hereto as Exhibit "B. A true and correct copy of the Civil Case Cover Sheet as Exhibit "C." These are the only process, pleadings, or orders in the State Court's file that have been served on Defendant up to the date of filing this Notice of Removal.

14.    In accordance with 28 U.S.C. § 1446(b), this Notice is timely filed with this Court. Pursuant to 28 U.S.C. § 1446(b), "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through

service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." Defendant was served with Plaintiff's Complaint on November 2, 2022. This Notice of Removal was filed 30 days later on December 2, 2022. Accordingly, this Notice is timely.

15.    As required by 28 U.S.C. § 1446(d), Defendant will provide written notice of the filing of this Notice of Removal to Plaintiff's attorneys of record and will promptly file a copy of this Notice of Removal with the Clerk for the Superior Court of the State of California in and for the County of Orange.

16.    WHEREFORE, Defendant respectfully request that these proceedings, entitled *Salha v. U.S. Bank National Association, et al.*, Case No. 30-2022-01288308-CU-WT-NJC, currently pending in the Superior Court of the State of California, for the County of Orange, be removed to this Court.

Dated:  December 2, 2022                WINSTON & STRAWN LLP


By: */s/Caitlin W. Tran*
Joan B. Tucker Fife
Emilie C. Woodhead
Caitlin W. Tran
Attorneys for Defendant
U.S. BANK NATIONAL ASSOCIATION

AmericasActive:17832135.4